. QUINN, Appellant, vs. QUINN and others, Respondents.

*January 11—January 29, 1907.*

*Deeds: Equity: Undue influence: Presumptions.*

1. In case of a conveyance by an aged person, susceptible to undue influence, of his entire property, without consideration, to one in a position of trust and confidence, under suspicious circumstances which satisfactorily suggest the wrong, accompanied by proof of opportunity and disposition on the part of the beneficiary to exert influence, there arises a presumption that the conveyance was so induced, unless the grantee can negative that fact by direct proof.

2. In an action to set aside a deed given under such circumstances, the competent evidence, stated in the opinion, is *held* not to negative such presumption, and to present a situation precluding reversal of a finding of undue influence.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Action by heirs to set aside a deed executed by Richard Quinn, now deceased intestate, to the appellant, his son, on October 31, 1903, in consideration of one dollar and a bond secured by mortgage, on the part of appellant that he would support the grantor, according to certain details, including medical attendance, and, within one year after the grantor's death, would pay $200 to the pastor of the grantor's church, and provide proper burial; the deed being attacked on the ground both of mental incompetency of the grantor and fraud and undue influence on the part of the appellant. It appeared, substantially without dispute, that Richard Quinn was a man about 100 years old, with two sons and six daughters, all of mature years, the eldest living being about seventy-four years of age. Some fifteen years before his death he had conveyed eighty acres to his son *John* and another eighty acres to his son *Michael,* this appellant, retaining eighty acres upon which he had thereafter lived, being supported by the rents thereof. He had often declared his purpose that out of this eighty should be provided, at his death, money for his daughters. Appellant was a well-to-do farmer, having some 200 acres adjoining his father's farm. After some experiments in renting the land to other relatives, the remaining eighty had for the past few years been rented to appellant, in consideration of his furnishing his father board and paying him either $100 or $150 per year. In October, 1903, he gave up his attempt to live in his own house and went to the appellant's, about three quarters of a mile away, to live. On October 31st the appellant and his father went to the office of a lawyer in Watertown, and together gave directions to draw a deed of the remaining eighty to *Michael,* and the bond and mortgage back, above described, which papers were executed in the presence of that attorney, and at the direction of both the deed was at once recorded. The trial court found

that the property in question was worth $6,500, and was all that Richard Quinn owned, except unascertained moneys held or indebtedness owed by *Michael Quinn* for back rent; that Richard could neither write nor read writing, and at the time of the execution of the deed was incompetent and mentally incapacitated to make a valid deed of any of his property; that for several years before Richard Quinn had been entirely dependent upon the appellant to care for him and to transact all his business, purchasing his clothing and necessaries of life, and the like; that, although it would have been entirely convenient to do so, no notice or information was given to any of the other children of the purpose to execute this deed, or of its execution, except by placing it on record; that the appellant took his father to the attorney's office to have the deed executed; that, owing to the enfeebled condition of Richard in mind and body, appellant took undue and unconscionable advantage of him and thereby obtained the deed, and that the same was not the free or voluntary act of the grantor; that Richard Quinn died July 16, 1904, after about four months of paralysis; that appellant had had the possession and occupation of the premises from the time of the execution of said deed, which was worth $250 a year, and that the board and care of his father, together with the sums paid out by him in accordance with said bond, amounted to about $450, whereupon judgment was entered vacating and declaring void said deed, but providing that appellant should retain the use and enjoyment of the premises until October 31, 1905, as full compensation for his services to, and expenditures for, his father. From that judgment the defendant, *Michael Quinn,* appeals.

For the appellant there was a brief by *Skinner & Thauer,* attorneys, and *James E. Malone,* of counsel, and oral argument by *Mr. Malone* and *Mr. Nicholas Thauer.*

*John G. Conway,* for the respondents.

DODGE, J.   If either of the findings of the trial court
that Richard Quinn was mentally incompetent to execute the
deed, or that his execution thereof was procured by undue
influence of the appellant, is sustained, of course the judg-
ment setting aside that deed is correct.  We might have diffi-
culty in reaching concurrence with the first of these findings,
but, inasmuch as we have concluded that the latter cannot
be reversed, we shall find it unnecessary to discuss any other
question upon that branch of the case.

In this, as in so many others of this class of cases, there
is no direct proof of the exertion of any influence or solicita-
tion by the beneficiary upon the grantor to induce the specific
act assailed.   Since such transactions are usually secret and
confined to the two parties, those attacking the conveyance
after the death of the grantor have ordinarily no means of
establishing what took place save by the testimony of their
antagonist, and, in deference to the frequency of this situa-
tion, has been laid down the rule of law that in case of a con-
veyance by an aged person, susceptible to undue influence,
of entire property, without consideration, to one in a position
of trust and confidence, under suspicious circumstances which
satisfactorily suggest the wrong, accompanied by proof of op-
portunity and disposition on the part of the beneficiary to
exert influence, there arises a presumption that the convey-
ance was so induced, unless the grantee can negative that fact
by direct proof.   Substantially all the decisions upon this
subject up to that time were collected, and many of them
discussed, in *Vance v. Davis,* 118 Wis. 548, 95 N. W. 939,
which has been succeeded by a careful discussion and elucida-
tion of the rule in *Winn v. Itzel,* 125 Wis. 19, 103 N. W.
220.   The trial court doubtless held the facts sufficiently
proved to bring the present case within that rule, and that is
the first question for consideration here.

An examination of the record discloses plenty of evidence
tending to establish a greatly enfeebled mental condition of

Richard Quinn; also great, if not complete, reliance upon the appellant for acts involving business judgment or choice. For years he had surrendered all attempts at the management of his farm, had turned its use over to the appellant, who, apparently, had also made all purchases of necessaries for his father, which seem to have been practically limited to clothing and tobacco, besides which there is proof of the actual exertion of influence by appellant over his father back as far as five or six years before this transaction, inducing him to quarrels with his prior tenants and to rejection of them and repudiation of his contracts.    There is evidence to strongly indicate that, for the last five years, the father, like a young child, received from the hand of that son every necessary of life.    From such evidence we are convinced that the trial court was justified in its conclusion that the grantor was susceptible of undue influence in business affairs and that there was shown a disposition on the part of the beneficiary to exert influence, and that a situation of trust and confidence and of reliance by the father on his son existed between them.    The element of opportunity, the absence of which was very significant in *Vance v. Davis, supra,* was also inferable from the obvious fact that the matter of this conveyance had been subject at least of conference between appellant and his father, privately, as shown by the fact that they went together to an attorney to have the deed drawn and that appellant participated with his father in giving direction to such attorney.    The conveyance covered the entire property within the control of the grantor, and was so far in excess of the probable value of the services to be rendered as to be practically a gift.    Improbability of the voluntary character of the act is suggested by the fact that valuable property had already several years before been given by Richard to the appellant with the declared purpose of retaining this remnant of his land as a means of providing portions for the daughters, many of whom were in needy circumstances

and none of them affluent, while the appellant had become entirely well to do. The element of secrecy, which in some cases has been given great prominence in raising the presumption of undue influence, was present in the sense that no other member of the grantor's family was given any opportunity to confer with him upon it, and, while we are not inclined to give great significance to mere omission to consult with others, in the absence of other significant facts, yet in the presence of those here presented the failure of the appellant to give either brother or sisters an opportunity to confer with their father before the disposal of this last remnant of his once considerable estate is at least consistent with the hypothesis that he had, by means of his situation of confidence and influence, induced his father to perform this act. True, on many of these subjects there was conflict of evidence, but not such that we are able to affirm such clear preponderance against the trial court's finding as would warrant us in setting it aside. Thus we think the court was justified in finding the existence of every fact and condition to establish *prima facie* that this deed was the fruit of what' the law dominates as undue influence—the subordination of the will of the grantor to that of the grantee.

The next question is whether that fact has been negatived by direct evidence. To that end is presented first the testimony of the lawyer who drew the deed, which certainly tends to show that the grantor understood the plan effectuated thereby, and consciously and intentionally gave the directions and assented thereto, but the interview at which this was done was, according to the same testimony, pervaded by the presence and participation of the appellant, and is barren of direct evidence from the mouth either of the attorney or of the appellant himself that the latter did not, even at the interview with the attorney, dominate and direct the father's will. The only other direct evidence is testimony of the appellant himself to a private interview with his father, at which the

latter expressed the wish to make the arrangement consummated by the deed, bond, and mortgage, and the declaration that at no other time did he solicit or request the same. This evidence was taken under and subject to objection to appellant's competency to testify to a transaction between himself and his deceased father. It was clearly inadmissible and the witness incompetent. No witness had either affirmed or denied or attempted to testify with reference to any transaction between appellant and Richard Quinn having relation to this conveyance or the disposition of the property. Sec. 4069, Stats. 1898, in the clearest terms denies competency of the beneficiary under such a deed to testify to such transactions with the grantor, except only in case the opposite party shall first be examined or examine some other witness in his behalf concerning the specific transaction or communication. *Martin v. Hillen,* 142 N. Y. 140, 36 N. E. 803. There was evidence more or less in conflict tending to support inference that Richard Quinn might voluntarily have changed his desire or purpose to provide out of this land for his daughters. Other facts and circumstances having a contrary tendency were presented. There was evidence for and against conduct on appellant's part claimed to evince disregard of both filial and contract duty toward his father and a disposition to take pecuniary advantage of the latter's asserted helplessness. Indeed, the relations between Richard Quinn and his children, the degree of his mental decadence, and appellant's attitude and behavior toward him were involved in a flood of conflicting testimony to inconsistent facts and circumstances. In such situation we cannot feel justified to invade the trial judge's function of passing on the credibility of the testimony or the significance of involved and correlated circumstances and conduct nor to conclude that the finding of undue influence is against the clear preponderance of all the evidence.

*By the Court.*—Judgment affirmed.

MARSHALL and TIMLIN, JJ., dissent.