NYHAGEN, Administrator, Appellant, vs. MARKHAM and
wife, Respondents.

*October 8—November 6, 1918.*

*Deeds: Parent and child: Fraud: Undue influence: Evidence.*

In an action to set aside a conveyance by an aged woman, for a
small consideration, of a large part of her property to her
daughter (one of five children), findings by the trial court to
the effect that the deed was not procured by fraud or undue
influence of the grantee or her husband, an attorney, are *held*
to be sustained by the evidence, both the grantor's suscep-
tibility to such influence and the disposition of the defend-
ants to exercise it being disproved.

APPEAL from a judgment of the circuit court for Mani-
towoc county: JAMES O'NEILL, Judge. *Affirmed.*

Action in equity originally brought by Cornelia E. Win-
diate to set aside, on the ground of fraud, a deed of 116
acres of farm land which she had executed and delivered
to her daughter, the defendant *Ida E. Markham.* After
trial and before judgment Cornelia died and her admin-
istrator was substituted as plaintiff and brings this appeal
from judgment negativing fraud and dismissing the com-
plaint.

The facts are in brief as follows: Cornelia Windiate and
her husband, Thomas Windiate, lived in Manitowoc many
years and successfully operated a hotel, from which busi-
ness they retired in 1910, the husband having accumulated
an estate of about $30,000 and the wife having in her own
name the land in question near Manitowoc, worth some-
where from $15,000 to $18,000, and a small house and lot
in the city of Manitowoc. The husband died in 1911 at the
age of eighty-four years, intestate. The wife continued to
live at the homestead in Manitowoc. She was the admin-
istratrix of her husband's estate and settled it with the ad-
vice and assistance of the defendant *Herbert L. Markham,*
husband of *Ida,* a lawyer at Manitowoc. There were five
children, all adults, viz. the defendant *Ida,* the eldest, Belle,

wife of the plaintiff, a banker at Manitowoc, Cornelia Paine, a widow with six children living at Oil City, Pennsylvania, Bert, a steamfitter, married and living in Chicago, and Thomas, a clergyman, unmarried and living at Monterey, Tennessee, where he conducted a church school and hospital. All of the children were on excellent terms with their mother. *Ida* and Belle lived near her in Manitowoc, and she was frequently with them, sometimes taking her meals with one or the other for considerable periods. She visited her son Thomas at Monterey during the winters of 1914-15 and 1915-16. The farm in question was rented to the son Bert in January, 1909, but he left it in 1911, after his father's death, and thereafter seventy-three acres thereof was rented to the Pea Canners Association at an annual rental of $9 per acre, *Herbert Markham* renting the balance, consisting of pasture and garden, at $50 per annum. Mrs. Windiate was on excellent terms with her two sons-in-law at Manitowoc. *Markham* drew her leases, collected some rents, took care of the insurance, and advised her generally, while *Nyhagen* kept her accounts at the bank and had general care of her finances. She never questioned the acts of either. Her memory was somewhat impaired during her later years, but her competency to transact business is not now questioned. In May, 1915, the defendant *Herbert Markham* made a written offer to purchase the farm, the terms proposed being to surrender *Ida's* share of the father's estate to the other heirs and give a mortgage of $5,000 to the mother, but this was never accepted. In the summer of 1916 Mrs. Windiate frequently asked her daughter Belle if it would be a fair division if she gave *Ida* the farm in question, and Belle told her it would not. Several times during 1915 and 1916 she suggested to the defendant *Herbert* that she would deed the farm to him and asked him to draw a deed, but he told her that it would make trouble, that the other heirs would make a fuss, and declined to do it. On the evening of August 21st she went from her residence

in Manitowoc to the summer cottage of the *Markhams,* on
the farm in question, and stayed all night and had a long
talk with *Ida,* and proposed to deed her the farm for $1,000.
The evidence shows that *Ida* endeavored to dissuade her,
pointing out that the heirs would object, that there would be
trouble, and that her mother would lose her main support;
to which the mother replied that she would tell the children
to mind their own affairs, that she had the rent of the home-
stead and of her other house in town, had money in the
bank, and that Tom had $400 at interest for her. *Ida* then
objected that she did not have the cash to make the $1,000
payment, but said she had a $1,200 note given by her hus-
band which she could turn over, and her mother consented
to take it. On the following day *Mr. Markham* went to Al-
goma, and *Mrs. Markham,* at her mother's request, hitched
the horse to a buggy and with her own three daughters drove
to Manitowoc to the office of Judge Baensch. After wait-
ing a time they saw the judge and he drew the deed and it
was duly executed. Judge Baensch had known all the
parties for years and testified that Mrs. Windiate was an
unusually bright and active woman and was as bright at that
time as ever and well preserved mentally. The deed was
not put on record at once, as Mrs. Windiate said she wished
to tell the other children of the transaction herself. A few
days afterward *Ida* gave her mother her husband's note for
$1,000. Belle learned of the deed about two weeks after it
was executed, by the publication of the fact of the recording
thereof in the local newspaper. At once there was objection
by Belle and Thomas and Bert. Much ill feeling developed,
and on September 14th Thomas took his mother to Ten-
nessee, where she remained all winter, and neither of the
defendants was permitted to talk with her again. This action
was commenced October 28, 1916, claiming to set aside the
deed because, as alleged in the complaint, the defendants
had taken advantage of her trust and confidence in them
and of her ignorance of business and of their influence over

her and thus procured the execution of the deed. Mrs. Windiate's deposition was taken in Tennessee in January, 1916, and she was examined orally as a witness on the trial in April just prior to her death. She was eighty-one years of age and quite feeble and her memory was quite defective. She remembered the giving of the deed, stated that she made it of her own free will, denied that *Ida* urged her to sign it or tricked her into it, claimed that she always desired to divide the land equally and did not understand that by the giving of the deed *Ida* would get a larger share than the other children, and that she wanted the land back in her own name. In September, 1916, *Ida* deeded the land to a third person, who at once deeded it to *Mr.* and *Mrs. Markham* and to the survivor of them.

The trial court found that when the plaintiff executed the deed she was entirely capable of understanding the nature of the act and of exercising an intelligent judgment, and that she executed it freely and voluntarily in pursuance of a purpose which she had entertained for a considerable time; that neither of the defendants made any false representations or was guilty of any fraud or undue influence in the matter; that it had been understood in the family that each child should share equally in the estate and that such was the expectation of Mrs. Windiate, but that "for reasons disclosed by the evidence the deceased concluded to give this farm to her said daughter." To these findings the trial judge added a statement that he believed the mother thought the heirs would in some way make the division equal, and this probably would have been done but for the unfortunate differences which arose soon after the deed was executed.

For the appellant there were briefs by *Nash & Nash* of Manitowoc, attorneys, and *Geo. G. Greene* and *Jerome R. North* of Green Bay, of counsel, and oral argument by *Mr. North.*

For the respondents there was a brief by *Hougen & Brady* of Manitowoc, and oral argument by *A. L. Hougen.*

WINSLOW, C. J.   There was no direct affirmative evidence of fraud or undue influence in the present case.   The rule is very well settled in this court that, in case of a conveyance by an aged person of substantially his entire property without consideration to one in a position of trust and confidence, if it be shown (1) that the grantor was unquestionably susceptible to undue influence, (2) that there was opportunity for such influence, (3) that there was a disposition on the part of the grantee to exercise it, and (4) that the result clearly appears to be the effect of the supposed influence, a *prima facie* case of fraud is made out, which must be met by affirmative evidence establishing the good faith of the transaction or it will prevail. *Vance v. Davis,* 118 Wis. 548, 95 N. W. 939; *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220; *Quinn v. Quinn,* 130 Wis. 548, 110 N. W. 488.

Doubtless the trial judge tested the present case by this rule and found that the case required had not been made. Careful reading of the record convinces us, not merely that the evidence does not preponderate against the trial judge's conclusions, but that they are sustained by the evidence. While there was unquestionably the confidential relationship and the opportunity for the exercise of undue influence, the evidence entirely fails to show that the grantor was susceptible to such influence or that there was any disposition on the part of the defendants to exercise it.   On the contrary, both propositions seem to us to be disproved by affirmative evidence.

*By the Court.*—Judgment affirmed.