WOOD and others, Respondents, vs. COLEMAN and wife, Appellants.

*February 10—March 8, 1921.*

*Deeds: Undue influence: Evidence: Appeal: Exceptions not considered.*

1. In an action to set aside a deed from a ninety-five-year-old father to his daughter and her husband, where the evidence showed that the deed was executed when it was apparent that the grantor was dying and that the transaction was concealed from other relatives, findings of the trial court that the grantor was incompetent and that the deed was a result of undue influence are sustained.

2. Exceptions will not be considered where rulings favorable to the appellant would not change the decision on the issues litigated, nor will they be considered where no grounds are stated, no propositions argued, and no principles of law discussed.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.  *Affirmed.*

The action was brought to set aside a deed by which George Wood, deceased, conveyed certain property in the town of Windsor to his daughter, *Anna M. Coleman,* and her husband, *Thomas G. Coleman.*  The plaintiffs are heirs at law of George Wood, deceased.

George Wood died intestate on the night of May 12, 1919, at the city of Madison, Wisconsin.  At the time of his death he was nearly ninety-five years of age.  Between 12 o'clock noon and 1 o'clock p. m. of the day of his death he made the deed in question.  Two causes of action are set forth in plaintiffs' complaint, alleging entire incapacity of George Wood at the time of affixing his mark; entire lack of acknowledgment of the instrument by George Wood; entire lack of delivery of the deed; and fraud and undue influence in obtaining the deed.

Defendants plead a general denial, alleging that George Wood was of sound mind and memory at the time of the conveyance; that the conveyance was the free act and deed of George Wood; that on the day in question George Wood knew all of his children and grandchildren and nephews and nieces and knew all about his property and the location thereof and gave directions as to what should be done with the same; that George Wood was fully cognizant of the contents of the conveyance, the same having been read over to him several times by defendant *Thomas G. Coleman* before the execution and delivery thereof by George Wood to *Thomas G. Coleman* and *Anna M. Coleman;* that the instrument was duly acknowledged and recorded according to law; that the conveyance was made pursuant to a former and previous agreement; and that the execution was in conformity with the previous agreement made during the forepart of April, 1919, prior to the coming of George Wood into the home and residence of the defendants.

The court found that at the time the deed conveying the property in question to defendants was signed and recorded George Wood did not possess sufficient mental capacity to make a valid transfer of his property and that the execution of the deed was procured through undue influence on the part of the defendants. Judgment was entered setting aside the deed. This is an appeal from such judgment.

For the appellants there was a brief by *F. K. Shuttleworth* of Madison, attorney, and *Luce & Wilson* of Elkhorn, of counsel; and the cause was argued orally by *Mr. Shuttleworth.*

For the respondents there was a brief by *Gilbert, Ela & Heilman* of Madison, and oral argument by *Emerson Ela.*

SIEBECKER, C. J. A study of this case convinces us that the trial court's findings of fact are well sustained by the evidence. The opinion of the court gives a full and comprehensive statement of the ultimate facts established by the evidence. The conclusions of facts shown by the evidence are so fully stated therein that nothing is left to be added by way of substance or comment. We adopt it in its entirety as expressive of the views of this court:

"There are many circumstances connected with this case that require explanation on the part of these defendants. The grantor was a man nearly ninety-five years of age, who had been crippled and dependent upon others for care for many years. He was taken to the home of the defendants, where he was given the best of care and the kindest of attention. The defendants directed the preparation of the deed on Friday, without calling the scrivener to the home or giving him any opportunity to communicate with decedent. It was apparent to those who saw decedent on Saturday, Sunday, and Monday that he was rapidly approaching the end of life. On Saturday he was breathing hard and spoke few words. On Sunday he was gasping for breath and too sick to speak, and gave no sign of recognition when his son-in-law bade him good-by. On Sunday the deceased himself sent word to his oldest son that he was

dying. On Monday forenoon the decedent did not speak to one of his sons who came to see him, or give him any sign of recognition. On Monday afternoon one of the defendants' witnesses, who was a trained nurse, recognized the fact that he was a dying man. Yet defendants did not attempt to secure the execution of the deed until Monday noon. They said nothing about the deed to the other relatives of decedent who came to see the old man. But within an hour of the time when the last of these relatives had left the home of the defendants they called in the neighboring grocer, who had a notary's commission, and he signed the acknowledgment of this deed. It is apparent from his testimony that he had no conception of the duty of a notary in taking an acknowledgment under such circumstances and that he did nothing to ascertain whether decedent knew what he was signing or whether he was in such mental condition as to be able to acknowledge such an instrument. The defendants did not tell any of the relatives of the decedent of the execution of these papers until about two months after his death, and then they suggested that they would divide the property described in the deed with one of the children of the decedent if she would stand with them in this contest.

"Under familiar rules this set of circumstances established *prima facie* that the deed was procured by undue influence, 'which must be met by affirmative evidence establishing good faith of the transaction.' *Nyhagen v. Markham,* 168 Wis. 91, 95, 169 N. W. 283. There is no evidence which satisfies the court of the good faith of the transaction here in question. The testimony of the witnesses to the deed and of the daughters of the defendants as to what took place at the time of the execution of the deed does not satisfy the court because of the demeanor of these witnesses and of the inherent improbability that a dying man, who gave his son no sign of recognition during the forenoon, would at noon of the same day give specific detailed directions as to the stamping and recording of the deed as testified to by them.

"The decedent did not have the power to comprehend his property even as early as the fall of the year preceding his death in May. He then suggested the necessity of selling the land here in question in order to keep himself out of the poorhouse, when he in fact had abundant personal property

to supply all his needs without selling the realty. He did doubtless state to those not members of the defendants' family that he desired to give the property here in question to the defendants, but this was after he had come to live with them and had come under their influence. He had previously expressed the determination to divide his property among his children equally. The evidence is voluminous. It will serve no useful purpose to attempt to review it in further detail."

We have examined the forty-eight exceptions presented by appellant to the rulings of the trial court on admission and rejection of evidence. It is our opinion that none of them constitute prejudicial error in the case. The exceptions are too numerous for detailed discussion, and are not of a nature to require treatment, because a ruling on the points embraced in the exceptions, favorable to appellant, would not have changed the decision upon the issues litigated. As to most of these exceptions, the observations made in *Roedler v. C., M. & St. P. R. Co.* 129 Wis. 270, 109 N. W. 88, are applicable:

"No grounds are stated, no propositions argued, and no principles of law discussed. Obviously, such enumeration of exceptions is not what is contemplated by the rules of this court as to what a brief should contain. Mere exceptions, not deemed worthy of specific consideration by counsel, cannot be expected to receive consideration from this court."

*By the Court.*—The judgment appealed from is affirmed.