Potter, Plaintiff, v. Schleck, Defendant. [Two appeals.]
*November 30, 1959—January 5, 1960.*

For the plaintiff there were briefs by *Don F. Meloy,* and oral argument by *Mr. Meloy* and by *Mr. Franklin P. Hall,* both of Madison.

For the defendant there was a brief by *Aberg, Bell, Blake & Metzner* and *John F. Stumreiter,* and oral argu-

ment by *Mr. Charles P. Seibold, Mr. Carroll E. Metzner,* and *Mr. Stumreiter,* all of Madison.

FAIRCHILD, J. 1. *Order denying summary judgment.* Defendant based his motion for summary judgment principally on a provision in the lease between defendant and plaintiff. Because the verdict supports the judgment in favor of defendant, and we reach the conclusion that the circuit court properly permitted the verdict to stand, it is unnecessary to consider the questions raised by defendant's appeal from the order denying his motion for summary judgment, and that appeal will be dismissed as moot. For the purpose of taxation of costs, defendant will be considered the prevailing party.

2. *Support for jury finding of no ice where plaintiff fell.* Plaintiff claimed that he fell because he slipped on a strip of ice which lay across the sidewalk opposite the downspout. There is a conflict in the evidence as to (a) whether there was any ice opposite the downspout, and (b) whether he fell opposite the downspout. The jury's negative answer to the first question would result from a negative finding upon either, or both of the propositions just mentioned.

Exhibit 33, herewith reproduced, is a photograph showing the area where plaintiff fell, although taken at a different season.

The downspout is attached to the west wall of the apartment building at the southwest corner. It discharges water onto a concrete splash block which runs south to the public sidewalk. The splash block is four and nine-tenths feet from north to south, and is one and three-tenths feet wide. Four and eight-tenths feet west of the west edge of the splash block is a concrete private walk, which runs north and south, and joins the public sidewalk at right angles. The private walk is three feet wide. From approximately one to three feet east of the splash block, there are some

Exhibit 33

slightly raised patches of rough concrete on top of the side-walk. There is a window in the south wall of the building with its west edge a little distance, perhaps four feet from the southwest corner. It is undisputed that when water is discharged from the downspout, the elevations and construction of the splash block and sidewalk are such that water will pond to some extent on the sidewalk.

Mr. Potter fell at about 6:30 a. m. Just previously, he was walking toward Jean street on the private walk, turned to his left (east), and walked a few steps on the public sidewalk to the place where he fell. After he fell, he felt ice on the walk with his hand. Several witnesses called by plaintiff testified that shortly after the fall, or later that day, they saw a patch of ice on the sidewalk, stretching across it and immediately opposite the downspout. Defendant testified that he examined the area at two o'clock that afternoon, and there was no ice. The maximum temperature that day was 13 degrees, and there were twenty-four minutes of sunshine. Each party called a witness who was permitted to state his opinions based on temperature, precipitation, and other weather data for several weeks before December 20th bearing upon the probability of ice forming on the sidewalk from water collected on the roof, and deposited by the downspout. Taking all the evidence together, there was a jury question as to the presence of ice.

Mr. Potter testified at one time that he took "a couple steps," and at another time, "either four or five" steps from the private walk to the place where he fell. A Mr. Ayen said that Potter took three, four, or five steps, but also testified that Potter fell opposite the downspout. Mr. Ayen saw Mr. Potter from the other side of the street, but not directly across it. A Mrs. Lundy, who lived in the corner apartment, looked out her window after Mr. Potter had fallen, and saw him in a crouching position "just opposite" her window. It was shown that Mr. Potter's steps were somewhere between two and three feet in length, and that he walked with a shuffle. If he took five steps at two feet per step, he was seven to 10 feet east of the private walk, and one to four feet east of the splash block. If Mrs. Lundy meant she saw him in a line perpendicular to her window, he was four feet or more east of the splash block when she saw him. All this evidence taken together raised a jury

question, whether Potter fell opposite the downspout, or farther east, perhaps in the area where the raised rough concrete was on top of the sidewalk.

The first question in the special verdict was submitted in the form requested by plaintiff, and he makes no complaint as to its form. It is clear that the jury's negative answer was sustained by evidence.

3. *Inconsistency.* Plaintiff asserts that the answer finding there was no accumulation of ice where he fell is inconsistent with the finding that plaintiff was not negligent. We do not agree. Plaintiff was elderly. It was somewhat dark. The jury may have decided that he fell where the sidewalk had rough concrete upon it. There was evidence that plaintiff suffered from Meniere's disease off and on after 1944; that vertigo is one of the symptoms of the disease, and that it may cause a fall, although several people who knew plaintiff testified that they had not known of any other instances where he had fallen.

4. *Instructions.* Plaintiff believes that the jury's unfavorable answer to the first question may have resulted from instructions which imposed too heavy a burden of proof. The court instructed the jury that, "before you are justified in answering the question 'Yes,' you must be satisfied or convinced . . . ," etc. The phrase "satisfied or convinced" was used several times. Plaintiff correctly points out that the word "convinced" does not appear in an instruction previously approved by this court on various occasions. *Bursack v. Davis* (1929), 199 Wis. 115, 121, 225 N. W. 738; *Bengston v. Estes* (1952), 260 Wis. 595, 598, 51 N. W. (2d) 539. Plaintiff contends that the word "convince" requires the jury to reach a higher standard of certainty than the word "satisfy" and that the error is not cured by stating the test in the alternative. We recently considered an instruction using the same alternative phrase "satisfied or convinced" in *Powers v. Joint School Dist.*

(1958), 2 Wis. (2d) 556, 561, 87 N. W. (2d) 275. There, also, reference was made to the approved instruction, but the attack was made upon the use of other phrases, and not upon the alternative phrase "satisfied or convinced." What was said in the *Powers Case,* however, we believe is applicable here (p. 562) :

"If the instruction as actually given was incorrect, and we do not hold it so, we cannot believe that prejudice resulted from it. It is inconceivable to us that the jurymen so accurately retained the precise words of the instruction in their minds during their deliberations or that they so meticulously analyzed its exact shades of meaning, that their verdict could have been influenced by the departures from the norm."

5. *Defendant's expert.* Plaintiff argues that Mr. Sutton, a witness called by defendant, was not competent to express opinions bearing upon the probability that ice was present on the walk on December 20th. Plaintiff concedes that the determination of whether a witness possesses sufficient knowledge to qualify as an expert is usually within the discretion of the trial court, *Drott Tractor Co. v. Kehrein* (1957), 275 Wis. 320, 327, 81 N. W. (2d) 500; *Andersen v. Andersen* (1959), 8 Wis. (2d) 278, 283, 99 N. W. (2d) 190, but contends that the circuit court abused its discretion in this instance.

Mr. Sutton testified that he is licensed and employed as an engineer, working principally in the design and installation of mechanical heating equipment, ventilation, and refrigeration, and that he has had experience with the design, installation, and insulation of roofs; that he had checked the attic and roof of this particular building. He testified that he knew how to read climatological reports and had examined them for the month of December, 1955, as compiled at the Truax Field weather bureau, Madison. As a commanding officer of a naval vessel, he had formerly observed

and interpolated weather reports. He admitted that he was not familiar with certain technical terms, apparently used by climatologists, and plaintiff argues that his testimony as to physical matters was incorrect in other particulars. Plaintiff's counsel does not specify in his brief the particular answers given by Sutton which plaintiff claims were prejudicial. Much of Sutton's testimony consisted of statements of fact, such as repetition of climatological data and information from texts rather than his own opinion. Many questions put to him remained unanswered because of colloquies between court and respective counsel. He did testify, after plaintiff's objection was overruled, that it was his opinion that the amount of precipitation on the roof on December 18th could not, because of the conditions assumed and observed, have reached the sidewalk through the downspout in liquid form. Any moisture resulting from the film of snow would form ice before reaching the gutter, or in the gutter. We have reviewed the entire testimony of Mr. Sutton but do not find that it was an abuse of discretion to permit him to testify to the extent that he did.

6. *Discretionary reversal.* Plaintiff pleaded, and attempted to prove, that an ordinance of the city of Madison prohibits maintenance of any downspout in such position that the contents shall be cast upon, or made to flow over any public sidewalk. The circuit court was of the opinion at the trial that violation of this ordinance was not negligence *per se,* and declined to admit evidence of the ordinance, or instruct the jury that it existed. The court did instruct the jury "that it was the duty of Mr. Schleck to refrain from doing anything which would create an icy condition on the sidewalk which he ought reasonably to foresee might probably result in injury to a traveler who was proceeding on the sidewalk with reasonable care for his own safety."

We do not now decide whether this ordinance defines or creates a duty which a property owner owes to a pedestrian

using the sidewalk so that violation of the duty would be negligence *per se*. Assuming, however, that it does, the failure of the circuit court so to instruct the jury could have no direct or logical effect upon the jury's answer as to whether there was ice where the plaintiff fell. Had the jury decided that there was ice, but that defendant was not negligent, the question would then be pertinent.

Plaintiff claims, however, that his rights were prejudiced because the circuit court did not rule promptly on the question of the effect of the ordinance. Plaintiff suggests that some confusion arose on the trial because of this matter, and harmed his case. He argues that other incidents are a basis for exercise of our discretion to order a new trial in the interests of justice. We have examined the record with due regard to the court's ruling on the ordinance, and to the other incidents referred to in plaintiff's brief, but the record does not make it appear to us probable that justice has miscarried.

*By the Court.*—Appeal from order denying summary judgment dismissed. Judgment affirmed.

MARTIN, C. J., took no part.