Hallows, J.
 

 Three issues are presented: 1. Were the findings of the trial court of undue influence contrary to the great weight and clear preponderance of the evidence? 2. Were the findings based upon a misconception of the law relating to the burden and degree of proof? 3. Should a new trial be granted in the interest of justice because of certain incidents occurring during the trial involving the jury, even though the verdict was only advisory?
 

 
 *20
 
 This case is unusual in that the donor, or transferor, is seeking to recover, whereas in most undue-influence cases involving
 
 inter vivos
 
 gifts or testamentary gifts recovery is sought by someone other than the donor. However, the same rules of law apply, and have been discussed in many decisions, most recently in
 
 Will of Freitag
 
 (1960), 9 Wis. (2d) 315, 101 N. W. (2d) 108,
 
 Estate of Larsen
 
 (1959), 7 Wis. (2d) 263, 96 N. W. (2d) 489, and
 
 Estate of Fillar
 
 (1960), 10 Wis. (2d) 141, 102 N. W. (2d) 210. As we stated in the
 
 Freitag Case,
 
 in order to establish undue influence four elements must be proved (p. 317) :
 

 “Stated in capsule form these are: Susceptibility, opportunity to influence, disposition to influence, and coveted result. Stated more completely: 1. A person who is susceptible of being unduly influenced by the person charged with exercising undue influence; 2. the opportunity of the person charged to exercise such influence on the susceptible person to procure the improper favor; 3. a disposition on the part of the party charged, to influence unduly such susceptible person for the purpose of procuring an improper favor either for himself or another; 4. a result caused by, or the effect of such undue influence.”
 

 On appeal this court will not retry the controversy. Its duty is to determine whether the trial court’s findings are so erroneous as to be contrary to the great weight and clear preponderance of the evidence. See
 
 Weber v. Kole
 
 (1959), 7 Wis. (2d) 107, 95 N. W. (2d) 784, where this court said this principle has been stated in almost every volume of Wisconsin Reports. This requires an examination of the evidence, not to determine whether this court might have reached a different decision, but whether there is sufficient credible evidence to support the findings. The trial court found the four elements or ultimate facts of undue influence were established by clear, convincing, and satisfactory evidence which is a correct statement of the burden of proof in an un
 
 *21
 
 due-influence case. Upon examination of the record we are satisfied that none of the essential findings is contrary to the great weight and clear preponderance of the evidence.
 

 Evidence Supporting the Findings of Undue Influence.
 

 The evidence shows that the plaintiff was a person unquestionably susceptible to undue influence. He was approximately sixty-two years of age with an I. Q. of 88 which a psychologist testified was equivalent to that of an average boy of twelve or thirteen years in ability to grasp ideas. He had a quiet, pleasant, trusting personality. He completed only the first year of high school and was not inclined to associate with other people, never married, did not own or drive an automobile, seldom left the farm, and had no business experience. His brother, Herbert, conducted all his business affairs, took care of his checks, investments, and bank accounts and paid his bills, and after Herbert’s death the defendant took over these duties. The defendant claims Elmer is not incompetent, was frugal, a good farmer, and sometimes argued with her about how the farming operations should be carried on. The evidence shows that Elmer did not understand the transactions involved and was susceptible to undue influence, at least in these matters about which he was unfamiliar and by a person whom he trusted.
 

 There is no question Neva had the opportunity to exercise undue influence on Elmer. They lived on the same farm, saw each other almost daily, and Neva handled the business affairs of Elmer. It is not necessary that opportunity be grounded in secrecy or that undue influence should culminate in one act such as often constitutes duress. As stated in
 
 Will of Ball
 
 (1913), 153 Wis. 27, 35, 141 N. W. 8, in referring to undue influence:
 

 “It is, really, one of the most reprehensible of deceits because of the cunning, insidiousness, and artifices of seduction,
 
 *22
 
 which, in general, characterize it and by means of which the unsuspecting victim is rendered powerless to carry out his own wishes . . .”
 

 On the third element of the defendant’s disposition to influence the plaintiff unduly, the evidence is equally strong. Perhaps it was natural for the defendant, even though married in middle age and after approximately five years of married life, to expect to inherit all of her husband’s property. Herbert apparently did not so intend. After the marriage, Herbert transferred his interest in the farm and other personal property to Neva. On his deathbed he made a will leaving all his property to her. But there is no evidence he ever intended to sever the joint tenancy with his brother. The defendant on several occasions told Elmer she was entitled to her husband’s interest in the property-held jointly with Elmer. Perhaps she had a moral right to this property, and there is some testimony she not only claimed she ought to have the property, but told Elmer it was hers. However justified the defendant’s belief, the end does not justify the means. We are concerned with the means employed by the defendant to carry out her admitted belief.
 

 In transferring this property, Neva took- the active and guiding part. She arranged with a banker beforehand for the redemption of the United States bonds and then brought Elmer to the bank. Some $38,000 of Series E bonds were cashed, and Elmer signed an assignment of half of these bonds to the defendant. The receipt which Elmer received for the bonds did not contain this assignment. When the checks for the bonds were received, Neva again took Elmer to the bank where he indorsed the checks in blank. The proceeds were reinvested partly in Series H bonds and partly in two per cent certificates of deposit and as a result Neva received half of the total amount in her own name and the other half jointly with Elmer. Neva not only obtained that which had been
 
 *23
 
 her husband’s, but more. Before the trial, Elmer had recovered the property held in joint tenancy with Neva.
 

 In the transaction which took place at the Spring Valley Bank the balance of the savings account which Elmer had acquired from Herbert was withdrawn and used, together with some cash of Neva’s, to buy $4,000 in bonds in Neva’s name only, At the same time, $6,000 was withdrawn from Elmer’s savings account and $6,000 in Series H bonds was obtained jointly in the names of Elmer and Neva. This property was also recovered before the trial, so that the net amount found by the trial court to be recoverable on this item was $169.21. The defendant had an attorney (not the one representing her in the trial or on appeal) prepare assignments for the promissory notes and mortgages. Elmer was told by Neva to go to the lawyer’s office and sign some papers which he did, thereby transferring a half interest to Neva. Neva paid the attorney for his services. In handling Elmer’s affairs, Neva requested from mortgagee, Moldenhauer, the balance due on a note. This was paid by check to the defendant who indorsed it, cashed it, and gave half to Elmer. In the case of another note identified as the Timm note and mortgage, Elmer received a check for $4,300 in Neva’s presence and satisfied the mortgage. Neva marked the note paid and the next day took Elmer to the bank where the check was cashed and Neva received half thereof. There is evidence tending to show the defendant bossed Elmer in the operation of the farm, accused Elmer’s sister and her husband of stealing things when they visited Elmer’s mother, and was an aggressive, domineering, and grasping woman.
 

 The defendant argues that the evidence is not clear, satisfactory, and convincing because Elmer could not remember or express the words or acts Neva used to influence him to make the transfers, that he had opportunity for independent advice, and that Elmer’s criticism of her conduct toward him after the transfers showed he was merely dissatisfied with
 
 *24
 
 the gifts which he had made. While this is some evidence in support of the defendant’s position, it is not sufficient. Moreover, Neva in handling Elmer’s affairs stood in the relationship of confidence and trust which raises the presumption that the conveyances were induced by undue influence. See
 
 Quinn v. Quinn
 
 (1907), 130 Wis. 548, 110 N. W. 488, and the cases discussed in
 
 Will of Ball, supra.
 
 The rule as stated in Restatement, 2 Contracts, p. 954, sec. 497, follows:
 

 “Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable.”
 

 The transfers appear to be the effect of undue influence. We cannot say that Elmer would have accomplished an unnatural result if he had willingly and knowingly transferred this property to the defendant because of his attachment for his epileptic niece, or because he thought Herbert should have transferred his interest in the jointly owned property to Neva. Plowever, there is no testimony that Elmer was so motivated. Neither was it wrong for Neva to advance to Elmer the arguments she could why her husband ought to have transferred the property to her. But there is a point where influence becomes undue influence.
 

 The acts of influence may be as varied as human conduct. Influence becomes undue when it commands or compels the exercise of volition on the part of the person subject to such influence so that the result is the accomplishment of the will or purpose of the one using influence rather than, in fact, the will or purpose of the donor. The nature of the influence is in the form of mental persuasion or compulsion but not necessarily fear, which is the element of duress. The degree of persuasion which is unfair depends on a variety of circumstances. Both permissible influence and undue influence may induce a transaction. The distinction is whether the result
 
 *25
 
 was produced by influencing a freely exercised and competent judgment or by dominating the mind or emotions of the person susceptible to the influence.
 

 Johnson v. Andreassen
 
 (1938), 227 Wis. 415, 278 N. W. 877, and
 
 Boardman v. Lorentsen
 
 (1914), 155 Wis. 566, 145 N. W. 750, cited by the defendant, are not in point. Here the unnecessarily complicated nature of these transactions was confusing and were directed by Neva, not by Elmer who did as he was told.
 

 The fourth element of the test is not whether the result is natural or unnatural, but whether the result accomplished clearly appears to be the effect of the defendant’s influence. Neva not only obtained the value of the jointly held interest of her husband which she wanted, but also part of Elmer’s assets. These latter assets were recovered prior to this suit, but are part and parcel of the effect of the transfers. The result clearly appears to be the effect of the defendant’s influence in thought, act, and deed.
 

 The Trial Court’s Findings.
 

 The trial court was not in error in treating the several transactions as one. The case was tried on the theory that the various transactions accomplished the one purpose of making a gift to the defendant of the property which her husband held in joint tenancy with Elmer. The various transactions had the same common basis of purpose, design, and accomplishment. They were not isolated transactions except in point of time, and logically must be considered together. The trial court rightly held that the transfers indicated one pattern.
 

 In instructing the jury the trial court stated that the plaintiff had the burden of proving undue influence by a “clear and satisfactory preponderance of the evidence.” The defendant argues the correct rule is not that the preponderance of the evidence must be clear and satisfactory but the
 
 *26
 
 evidence must be clear, convincing, and satisfactory. Assuming, arguendo, that the instructions are wrong, the giving of such instructions is not reversible error because the jury was acting in an advisory capacity and the trial judge was free to accept or reject the verdict in determining the facts. It was incumbent upon the trial court to make its own findings of fact even though it had an advisory jury. This the court did and stated therein that the plaintiff met the burden of proof by clear, convincing, and satisfactory evidence. It is the findings of the trial court which are under inquiry on appeal — not the advisory verdict of the jury.
 

 The burden of proof in undue-influence cases has been stated in various ways, resulting in some confusion. The problem is the degree of certitude the trier of the facts must have to determine the establishment of the facts constituting undue influence. In the class of cases involving fraud, of which undue influence is a specie, gross negligence, and civil actions involving criminal acts, the certitude must be of a greater degree than in ordinary civil cases, but need not be that degree necessary to find a conviction in criminal cases. In all three types of cases certitude must be reasonable,
 
 i.e.,
 
 based on reasons. Defined in terms of quantity of proof, reasonable certitude or reasonable certainty in ordinary civil cases may be attained by or be based on a mere or fair preponderance of the evidence. Such certainty need not necessarily exclude the probability that the contrary conclusion may be true. In fraud cases it has been stated the preponderance of the evidence should be clear and satisfactory to indicate or sustain a greater degree of certitude. Such degree of certitude has also been defined as being produced by clear, satisfactory, and convincing evidence. Such evidence, however, need not eliminate a reasonable doubt that the alternative or opposite conclusion may be true. In criminal cases, while not normally stated in terms of preponderance, the necessary certitude is universally stated as being beyond
 
 *27
 
 a reasonable doubt. The three rules were laid down as early as 1886 in
 
 Poertner v. Poertner,
 
 66 Wis. 644, 29 N. W. 386 (issue of adultery in a divorce case). Again in
 
 Klipstein v. Raschein,
 
 (1903), 117 Wis. 248, 94 N. W. 63 (fraudulent warranty), the court approved the clear-and-satisfactory-preponderance form of the rule, but stated (p. 253) :
 

 “The phrase usually employed in instructing juries, and the one that has been most frequently applied, and which in our judgment is the better way of stating the rule, is that the facts constituting the fraud must be established by clear and satisfactory evidence. We are inclined to favor that form of expression, though it means substantially the same as the one used by the trial court.”
 

 See also
 
 Trzebietowski v. Jereski
 
 (1914), 159 Wis. 190, 149 N. W. 743 (civil case involving a crime, “clear preponderance of the evidence” used by the trial court was substantially equivalent to “clear and satisfactory evidence”), and
 
 Hafemann v. Seymer
 
 (1926), 191 Wis. 174, 210 N. W. 373 (gross negligence required clear and satisfactory evidence, as required in civil actions involving fraud or violation of a criminal statute).
 

 Bursack v. Davis
 
 (1929), 199 Wis. 115, 225 N. W. 738 (assault and false imprisonment), stated the rule in terms of a fair and convincing preponderance and has been followed in actions involving penal conduct. But in
 
 Milonczyk v. Farmers Mut. Fire Ins. Co.
 
 (1929), 200 Wis. 255, 227 N. W. 873, the rule was corrected by substituting the word “clear” for the word “fair;”
 
 Muska v. Apel
 
 (1931), 203 Wis. 389, 232 N. W. 593;
 
 Lang v. Oudenhoven
 
 (1934), 213 Wis. 666, 252 N. W. 167, correction of rule not noted;
 
 Fredrickson v. Kabat
 
 (1954), 266 Wis. 442, 63 N. W. (2d) 756.
 

 It is to be noted in
 
 Bengston v. Estes
 
 (1952), 260 Wis. 595, 51 N. W. (2d) 539, the use of the word “clear” to qualify preponderance instead of “fair” in an ordinary
 
 *28
 
 negligence case was held to be reversible error because the phrase “clear preponderance” required a greater degree of proof than necessary in ordinary civil cases. This court in considering a jury instruction in an ordinary civil case in
 
 Powers v. Joint School Dist.
 
 (1958), 2 Wis. (2d) 556, 87 N. W. (2d) 275, declined to hold the expression (p. 561) : “. . . your minds must be satisfied or convinced by a preponderance of the evidence and to a reasonable certainty” a prejudicial departure from the norm, “that the jury be satisfied to a reasonable certainty by a fair preponderance of the evidence.” The plaintiff there argued by omitting the word “fair” before “preponderance” and by inserting “and” after “preponderance of the evidence” and before “to a reasonable certainty” required a greater degree of proof.
 

 The reasoning of the
 
 Powers Case
 
 was followed in
 
 Potter v. Schleck
 
 (1960), 9 Wis. (2d) 12, 100 N. W. (2d) 559, where the attack in an ordinary civil case was on the phrase “satisfied or convinced” because convinced required the jury to reach a higher degree of certainty. The statement of the complete rule of the burden of proof contains both the element of reasonable certainty and some degree of preponderance of the evidence. It is possible the contestant having the burden of proof may have the preponderance of the evidence fair, clear, or otherwise in his favor and still fall short of convincing the jury to a reasonable certainty of the existence of the facts for which he is contending.
 

 The rule cast partly in terms of clear and satisfactory evidence has usually been applied in undue-influence cases, and was thoroughly discussed in
 
 Will of Ball, supra.
 
 It was there stated (p. 35) :
 

 “The rule of clear and satisfactory evidence in fraud cases, as distinguished from mere preponderance of the evidence, is substantial and may, very properly, be the turning point, especially, when the matter rests in mere inference. As has been frequently said, while in ordinary civil matters the
 
 *29
 
 person on whom the burden of proof rests may rely upon evidence establishing the facts to a reasonable certainty, though the evidence be not, in all respects, clear and satisfactory, not so where fraud is the gist of the matter, then he must go further, — not to the extent of establishing the charge with the highest degree of certainty, but to that one which rests, not only in reasonable certainty, but on evidence which is clear and satisfactory.”
 

 The court relied on
 
 Lepley v. Andersen
 
 (1910), 142 Wis. 668, 125 N. W. 433, wherein it was pointed out that the statements of the rule as “clear and satisfactory evidence” and in other instances as “clear, satisfactory, and convincing evidence” were the same although the latter expression was of a more-emphatic nature and perhaps more appropriate in fraud cases. The standard in terms of the quality of the evidence, rather than the preponderance, was followed in the following fraud or undue-influence cases:
 
 Boardman v. Lorentzen, supra; Milwaukee Worsted Mills v. Winsor
 
 (1914), 157 Wis. 538, 147 N. W. 1068;
 
 State v. Solomon
 
 (1914), 158 Wis. 146, 147 N. W. 640;
 
 Elliott v. Fisk
 
 (1916), 162 Wis. 249, 155 N. W. 110;
 
 Will of Boardman
 
 (1922), 178 Wis. 517, 190 N. W. 355;
 
 Will of Emerson
 
 (1924), 183 Wis. 437, 198 N. W. 441;
 
 Will of Fortner
 
 (1926), 188 Wis. 594, 206 N. W. 969;
 
 Will of Shaver
 
 (1925), 187 Wis. 647, 205 N. W. 320;
 
 Will of Schaefer
 
 (1932), 207 Wis. 404, 241 N. W. 382;
 
 Eiden v. Hovde
 
 (1952), 260 Wis. 573, 51 N. W. (2d) 531;
 
 Will of Knierim
 
 (1955), 268 Wis. 596, 68 N. W. (2d) 545;
 
 Will of Quam
 
 (1960), 10 Wis. (2d) 21, 102 N. W. (2d) 217. In many of these cases, especially the more recent, this part of the standard was stated as clear, satisfactory, and convincing evidence. See also
 
 Will of Freitag
 
 and
 
 Estate of
 
 Fillar,
 
 supra.
 

 We do not believe there is any substantial difference in the two statements of the rule, both have two elements, reasonable
 
 *30
 
 certainty and the required quantity and quality of the evidence. From the standpoint of the trier of the facts it is preferable to state the second element of the burden of proof in terms of clear, satisfactory, and convincing evidence. This language better describes the quality and convincing power of the evidence necessary to produce the greater certainty or degree of reasonable certitude required to find undue influence, and implies the preponderance of the evidence must be something more than a mere or fair preponderance.
 

 New Trial in the Interest of Justice.
 

 The defendant argues that during the trial two jurors had separate conversations with witnesses for the plaintiff and, although the court was timely informed by counsel, it did not inquire into the nature of the conversations, but admonished the jurors almost immediately after the incidents occurred. The defendant argues the timing of such admonitions was prejudicial to her case and the conversations may have related to some evidence and were also prejudicial. While the matter was called to the court’s attention, at no time prior to the rendering of the verdict did the defendant’s counsel make any request for an inquiry into the incidents. This the defendant should have done and not speculate on the outcome of the verdict.
 
 Frion v. Craig
 
 (1957), 274 Wis. 550, 80 N. W. (2d) 808. As far as the record discloses, the incidents do not warrant the granting of a new trial. Such incidents are better handled by the trial court than by an appellate court and unless the trial court abuses its discretion a new trial will not be granted on appeal.
 
 Sandeen v. Willow River Power Co.
 
 (1934), 214 Wis. 166, 252 N. W. 706;
 
 Postal v. Saint Paul-Mercury Indemnity Co.
 
 (1958), 4 Wis. (2d) 1, 89 N. W. (2d) 545.
 

 A further reason exists for not granting a new trial on this ground. This was an equity case. The trial judge was the trier of the fact. The jury was merely advisory and the
 
 *31
 
 trial judge could disregard any finding made by the jury or take into consideration what weight it would give the verdict under the circumstances. No claim is made that the trial judge was prejudiced. That the trial court made findings of fact and reached the same result as the advisory verdict of the jury does not indicate the trial court’s judgment was erroneous. We have already said that the court’s findings are supported by the great weight and clear preponderance of the evidence.
 

 Appeal from the Order.
 

 The defendant urges that the trial court was in error in not vacating the judgment in respect to the ownership of the Timm note and mortgage. After the trial the defendant’s counsel discovered the Timm note was made payable to Herbert and the defendant and therefore claimed it belonged to the defendant. The evidence shows the Timms borrowed money from the Kuehns in 1942. The loan was refinanced with the Federal Land Bank in 1956. The note, taken after Mrs. Kuehn died, was not a new loan. The defendant inventoried the note as the joint property of Elmer and Herbert and declared the transfer from Elmer as a gift and so reported it to the Wisconsin department of taxation. No affidavit is made by the defendant personally as to the facts on her motion. The trial court was correct in finding that this note was the property of Herbert and Elmer.
 

 By the Court.
 
 — The judgment and order are affirmed.