## WILL OF SILVERTHORN.

*February 7 — March 1, 1887.*

WILLS: EVIDENCE.   *(1, 3) Testamentary capacity:   Burden of proof.
    (2) Transactions with deceased: Competency of devisee to testify.*

1. The evidence in this case — showing, among other things, that the
testator had for several years been suffering from softening of the
brain, which finally culminated in his death at the age of seventy-
five shortly after the execution of the will; that at times he had
suffered from severe nervous prostration, and that during such
times his intellect was very feeble and his power of memory largely
gone, but that in the intervals between such attacks his mind was
reasonably clear; that in one of such intervals he gave directions
for drawing the will and executed the same; and that the elements
entering into the will were few and simple, and the will itself a
reasonable one — is *held* to sustain the finding of the county and
circuit courts that the testator had sufficient testamentary capacity
to execute the will.

2. Whether a devisee or legatee named in a will is competent to testify
in support of the will to conversations and transactions with the
testator in his life time, not determined.

3. LYON, J., is of the opinion that the statute (sec. 3788, R. S.) requires affirmative proof of the testator's sanity before a will can be admitted to probate; but that when a *prima facie* case has been made, the presumption *of sanity* arises, and the burden of proof is thereafter upon the contestant.

APPEAL from the Circuit Court for *Winnebago* County.

An instrument purporting to be the last will and testament of Levi Silverthorn was presented to the county court for probate by *Levi J. Silverthorn*, one of the executors named therein. The probate thereof was opposed by *Rebecca Silverthorn*, the widow of the alleged testator. After a hearing, the county court admitted the instrument to probate. *Mrs. Silverthorn* thereupon appealed to the circuit court, and the matter was tried in that court. After the trial the court made and filed the following findings of fact:

"(1) That Levi Silverthorn died in the county of Winnebago, where he had been for many years a resident, on the 23d day of December, 1884. (2) That the disease of which he died was softening of the brain, and that such disease had been steadily progressing for several years, until it culminated in his death at the age of seventy-five or thereabouts. (3) That on the 16th day of July, 1884, he duly made, executed, published, and declared as his last will and testament the instrument in controversy. (4) That at the time of making said will, and for a long time prior thereto, his intellect was very feeble; that his power of memory was largely gone, and that his power of continuity of thought was largely destroyed, and he was capable of transacting only the simplest kind of business, such as the purchase of small quantities of groceries and supplies for his family, and then, in many cases, he was not capable of making the proper change therefor, but was obliged to ask others to do it for him; that at the time and times last aforesaid he was frequently unable to remember the names of some of his

nearest neighbors and friends, and would be obliged to inquire who they were; that in the little village of Omro where he resided he was frequently unable to tell where he was, and required the assistance of friends to show him the way home. (5) That in common conversation he would frequently lose the train of his idea, and would have to be prompted to enable him to regain it; that sometimes he would then go on with the subject, and at others would again seem to lose the idea. (6) That all the intelligent conversations shown at or about the time of the making of this will (in controversy) were of the simplest kind, and pertained to farming or the handling of farm products, which had been his life-work. (7) That he had a severe illness some five or six years prior to his death, which seriously impaired his health both physically and mentally, and from that time until his death his intellect was constantly growing more and more feeble. (8) That no undue influence was exercised in the making or procurement of said instrument proposed as a will. (9) That on the 27th day of December, 1880, he executed in due form a previous will, which has been offered in evidence in this cause, and propounded. (10) That said instrument, made July 16, 1884, was the last will and testament of said Levi Silverthorn. (11) That he had sufficient testamentary capacity to execute said will."

The court also made and filed the following conclusions of law from the facts so found: "(1) That said Levi Silverthorn had, at the time (July 16, 1884) of making said will, sufficient testamentary capacity to make a will. (2) That the instrument last aforesaid was his last will and testament, duly executed, published, and declared as such. (3) That the judgment of the county court herein should be affirmed."

Judgment was thereupon entered affirming the judgment of the county court admitting such instrument to probate.

Will of Silverthorn.

The contestant, *Mrs. Silverthorn*, appeals to this court from the judgment of affirmance.

For the appellant there was a brief by *Gary & Forward*, and oral argument by *Mr. Gary*. They contended, *inter alia*, that the mind of the testator was so impaired that a testamentary disposition of his property should not be sustained unless *affirmatively proved* to have been fairly made. *Mowry v. Silber*, 2 Brad. Sur. 147. Nothing but the most clear and satisfactory proof can establish this instrument as a will. *Delafield v. Parish*, 25 N. Y. 35, 36; *Mowry v. Silber*, 2 Brad. Sur. 133, 147; *Boyd v. Boyd*, 66 Pa. St. 283; *Cuthbertson's Appeal*, 97 id. 163; *In re Welsh*, 1 Redf. Sur. 238-9, 241-5; *In re Ames*, 51 Iowa, 596. It was error to allow *Levi J. Silverthorn* to testify to any transactions or communications of the deceased at the time of the making of this instrument, since he is a party to this suit, and derives his interest from the deceased. Sec. 4069, R. S.; *Daniels v. Foster*, 26 Wis. 686; *Belden v. Scott*, 65 id. 425; *Holcomb v. Holcomb*, 95 N. Y. 316, 326. In cases of wills the burden of proof is upon the proponent to establish the fact that the testator was of sound and disposing mind; and this burden *never* shifts during the trial, but remains with the party setting up the will. Sec. 3788, R. S.; *Delafield v. Parish*, 25 N. Y. 9, 29-35; *Williams v. Robinson*, 42 Vt. 658, 662-4; *Crowninshield v. Crowninshield*, 2 Gray, 526; *Gerrish v. Nason*, 22 Me. 338; *Cilley v. Cilley*, 34 id. 162; *Rees v. Stille*, 38 Pa. St. 138; *Riggs v. Wilton*, 13 Ill. 15; *Trish v. Newell*, 62 id. 196; *Comstock v. Hadlyme Ecc. Soc.* 8 Conn. 254; *Tingley v. Cowgill*, 48 Mo. 291; *Renn v. Samos*, 33 Tex. 760.

For the respondent there was a brief by *Hicks & Phillips*, and oral argument by *Mr. Hicks* and *A. H. Goss*. They argued, among other things, that when the disease is intermittent in its nature, it does not affect testamentary capacity, if the testator was free from it at the time of making his

will. Gary's Prob. Law, sec. 125 and cases cited; 9 Oreg. 128; 94 Ill. 560; 21 Me. 461; 31 N. J. Eq. 633; 4 Bradf. Surr. 238; 49 Wis. 179, 183. The testimony of *Levi J. Silverthorn* was competent. 3 Redf. 78; *Will of Wilson*, 103 N. Y. 374; *Brown v. Bell*, 58 Mich. 58. The burden of proving testamentary capacity is in the first instance upon the proponent of the will. But after he has made his *prima facie* case, and formally complied with the statutory requirement, the burden shifts to the contestant and remains with him throughout the trial. *Sloan v. Maxwell*, 13 N. J. Eq. 563, 580; *Hawkins v. Grimes*, 13 B. Mon. 257, 270; *Clark v. Ellis*, 9 Oreg. 128; *Higgins v. Carlton*, 28 Md. 115, 132; *Tyson v. Tyson's Ex'rs*, 37 id, 567, 584; *Grabill v. Barr*, 5 Pa. St. 441, 443, 447; *Pettus v. Bingham*, 10 N. H. 514, 516; *Perkins v. Perkins*, 39 id. 163, 168–170; *Kempsey v. McGinniss*, 21 Mich. 124, 147–8; *Barnes v. Barnes*, 66 Me. 286, 300; *Webber v. Sullivan*, 58 Iowa, 260; *Potter v. McAlpine*, 3 Demarest, 108, 115; *Will of Cole*, 49 Wis. 179, 182; *Lewis' Will*, 51 id. 101, 112.

LYON, J. 1. The main question presented by this appeal is, Was Levi Silverthorn, the alleged testator, of sound and disposing mind and memory when he executed the instrument propounded and probated as his last will and testament? As is usual in cases in which testators who, when they executed their respective wills, were on the border-line between mental competency and incompetency, the opinions of witnesses in this case as to the mental *status* of Levi Silverthorn are in conflict. This results from the different circumstances under which they saw him, and his various mental conditions at different times, which came under their respective observations. The causes for such conflict of opinion or, at least, for the opinion that the deceased was of unsound mind, are quite clearly reflected in the findings of the learned circuit judge. Those findings, from the sec-

ond to the seventh inclusive, contain statements of many facts and circumstances which, taken together and assuming that the same conditions existed when the will was executed, probably make a case of want of testamentary capacity, and which, unexplained, would be in conflict with the eleventh finding that the deceased then "had sufficient testamentary capacity to execute said will." But after a careful examination of the testimony, we are satisfied that there is no real conflict in the findings of fact, but that any apparent conflict therein may be satisfactorily explained without disturbing any of them.

When the will in question was executed, Levi Silverthorn was physically quite infirm. The process of softening of his brain had been going on for several years, but had not brought him to the state of idiocy or even incipient idiocy. His disease, however, caused serious nervous disturbances. At intervals he suffered from severe nervous prostration, continuing two or three days at a time. Often at these times he was in the mental condition described in the fourth, fifth, and sixth findings of fact. Probably he could not at those times have made a valid will. But, in the intervals between such attacks, there is abundant evidence that his mind was reasonably clear, and that he had sufficient mental capacity to make a valid will, within the rules of testamentary capacity which have frequently been laid down by this court. The elements entering into his will were few and simple, and were all the subjects of daily conversation and thought. His property consisted of a farm of 140 acres and the usual outfit of such a farm; forty acres of land detached therefrom; a small homestead in Omro, a few miles from his farm, on which he resided; a life insurance of $1,000, taken for the benefit of his wife; his household goods; and perhaps a small amount of other personal property. He had a wife and an adopted son, who lived on his farm. He had also a nephew and grand-

son, each of whom bore his name. They were evidently his favorites. No other persons seemed to stand so near to him as these persons above mentioned, and to them (and a favorite niece), in different proportions, he gave his property. To gather and hold these elements in his mind, to comprehend their relations to each other, and to form a rational judgment based upon them, would not seem to require any great mental power or effort. A man of very moderate intellectual ability would be equal to such a task.

We are satisfied from the evidence that during the intervals between the periods of sickness and prostration above mentioned the testator was usually competent to make a valid testamentary disposition of his property; that during one of these intervals he gave directions for drawing the will in question, and executed the same; and that he sufficiently understood the nature and effect of what he was doing. Such, we think, must have been the views of the circuit judge, although not as fully expressed in the findings as might be desirable. We understand the condition of the testator described in the fourth, fifth, and sixth findings of fact relates only to his periods of sickness and prostration, and that described in the eleventh finding to the lucid intervals between, including that during which the will was executed. This view makes the findings consistent with each other, and in accord with the fair preponderance of the evidence.

2. On the trial the proponent, *Levi J. Silverthorn*, who is one of the devisees named in the will, was permitted, against objection, to testify to conversations and transactions with the testator in his life-time. We are inclined to think the testimony was incompetent under sec. 4069, R. S., and have acted upon that impression by excluding from our consideration the testimony objected to. We do not, however, determine the question of the admissibility of such testimony in like cases.

3. In the argument of the cause in this court there was some debate as to which party is charged with the burden of proof when probate of a will is contested because of the alleged mental unsoundness or insanity of the testator. It was said that a remark in the opinion prepared by the writer in the case of *Will of Cole,* 49 Wis. 179, has led some members of the bar to maintain that, when a will is presented for probate, no affirmative proof of the mental soundness or sanity of the testator is required, but that the presumption of sanity asserted in that case is sufficient. We were somewhat pressed by one of the learned counsel to make a further deliverance on that subject.

This question of the *onus probandi* in such cases does not necessarily arise on this appeal, for we think the findings of fact are sustained by a preponderance of proof. Hence the question will not be here determined. Under the circumstances, however, the writer will be pardoned for expressing the opinion, on his own responsibility and without consultation with his brethren, that the statute (sec. 3788, R. S.) requires affirmative proof to be made of the mental soundness of the testator before the will can be admitted to probate, and that until such affirmative proof is made there is no presumption of sanity; but that, when a *prima facie* case of sanity is made by the proofs, and some contestant makes an issue as to the sanity of the testator, the presumption of sanity arises, and the burden of proving the testator of unsound mind is upon him who asserts it. Nothing further or different was intended in the *Cole Will Case,* or fairly to be inferred from the language there used, which is as follows: " However, the legal presumption is in favor of sanity, and, on the issue of sanity or insanity, the burden is upon him who asserts insanity to prove it. Hence, in a doubtful case, unless there appears a preponderance of proof of mental unsoundness, the issue should be found the other way."

*By the Court.*— The judgment of the circuit court is affirmed. The taxable costs in this court will be paid out of the estate of the testator. The rule of costs in the circuit and county courts is stated in *Will of Smith,* 52 Wis. 543.

See note to this case in 32 N. W. Rep. 287.— REP.