DOYLE and others, by guardian *ad litem*, Respondents, vs. WELCH and another, Appellants.

*May 9 — May 24, 1898.*

*Voluntary conveyance by aged person: Fraud: Undue influence: Burden of proof.*

1. Where a voluntary conveyance is made by an aged person of his entire property, without consideration and under circumstances of secrecy, to one who stands in a position of trust and confidence to him, the burden of proof is upon the grantee to show that the conveyance was not tainted with undue influence or fraud.
2. The presumption of undue influence and fraud in this case, arising from such a conveyance by an aged father to his daughter, to the exclusion of the children of his son, is *held* not to have been overcome by the evidence.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed.*

This is an action in equity to set aside a deed on the ground of mental incompetency and undue influence. The deed was made by one Edward Doyle, Sr., in favor of his daughter, the defendant *Annie Welch*, and covered a farm of eighty acres in Waukesha county, which comprised his entire estate. The plaintiffs are his grandchildren, being three of the minor children of a deceased son of the grantor, also named Edward. The defendant *Ellen Doyle* is also a minor child of Edward Doyle, Jr., who refused to be joined as plaintiff. The facts appearing on the trial are thus fairly and succinctly stated by the trial judge:

"Edward Doyle, Sr., had only two children: A son, Edward, who died about a year before the old gentleman. This son married, and lived with the old gentleman on a farm in Muskego for something like fifteen or twenty years after he married. He reared a family on that farm — a family of children — three of whom are plaintiffs in this action. He had an only daughter, *Annie Welch*, who mar-

ried early, and went to live in Milwaukee. For a short period she lived in a small house on the farm with her father,— on the farm belonging to her father,— with her husband. It seems when the son died the old gentleman wanted the widow to continue living on the farm with him, and she, not willing to do so, said she could not get along with the old man, and she wanted to go to Milwaukee and live in her own house, or live there, at least. The old gentleman, then, having no other place to go, went to live with his daughter, *Annie*. About ten months after that he died, being afflicted with a cancer, which grew gradually worse. The old gentleman was seventy-six years of age, feeble, and, even before he made the deed, his disease was pronounced fatal, and it was only a question of time when he would be taken away.

"While he lived on the farm, and while his son, Edward, was living, his expressions to other people, whenever he spoke of Edward, Jr., were kindly towards Edward having the property, and he would not even let *Annie Welch's* husband have a little piece of ground that they might occupy a small house on it. He stated on one occasion that he would never let it go out of the name of Doyle; that he had it from his father, and it would never go out of the name of Doyle. But when he goes to live with his daughter, *Annie*, his first expressions are that he would never let his property go to the Haydens; that the Haydens were not going to to have it; that he would leave the property to *Annie*. His expressions are brief. There are several of them: That he was going to leave it to *Annie*, and on three or four occasions he seemed to intimate that the reason was that he did not want the Haydens to have it. He seemed to be of the impression that Mrs. Doyle, who was a Hayden, would have some interest in his property, while in fact she could inherit no interest whatever; and in this regard was evidence, as it appears to me, that he was laboring under a mistake. That

he would never give any of it to her, meaning Mrs. Doyle. That she should never have it.

"There is not a scintilla of evidence to show that he ever had hard feelings towards these grandchildren. There is not a scintilla of evidence to show that he meant to disinherit the grandchildren; only that the Haydens, as he expresses it, should not have it. There is no evidence to show whether, when he went to Milwaukee, his relation to these grandchildren was one of like or dislike. They lived with their mother, and one lived with the family of *Annie Welch*. Now, about two months or so before the old man died, *Annie Welch* stated to a young man boarding there: 'Father says he is going to deed me all his property. What do you think of it?' And the young man said: 'Take it; take all you can get.' He testifies to this himself. About five weeks before the old man died *Annie Welch* goes to an attorney, and stated to him that her father wanted a deed made of the farm to her, and on this information the attorney drew the deed. She went three times to the attorney before he came to the house. Three times *Annie Welch* goes to the attorney's office, and takes a description of the land with her, and all the terms of the deed; or, at least, there is no evidence that the attorneys ever got any of its terms from any one else except *Annie Welch*. They, at their office, without seeing the old gentleman at all, drew up a deed of the farm from old Mr. Doyle to *Annie Welch* in consideration of one dollar and love and affection. With this deed drawn up in that style and for that consideration, the attorney goes to the house, and, having entered, *Mrs. Welch* calls her father from an adjacent room. He goes in, and the attorney says, 'I understand, Mr. Doyle, that you want to draw some papers?' Mr. Doyle said, 'Yes; I want to deed some property to my daughter;' and the attorney says, 'I've got a deed here;' and lays it down on the table, and Mr. Doyle sits down and writes his name, and *Mrs. Welch*

Doyle and others vs. Welch and another.

calls her daughter in from another room to witness it. The attorney says he might have been there five or ten minutes. He did not read it to Mr. Doyle; did not explain it to him; did not explain to him what the consideration was. The form and description were gotten from *Mrs. Welch*, if from any one. The old man was seventy-six years of age, living with his daughter on the most kindly and confidential relations. She was really his agent, in so far as getting the deed executed, if she acted therein by his instructions. The deed runs to her without any consideration other than love and affection. The deed was made when the old gentleman was diseased. I do not say that he was incompetent. I think I will find that he was mentally competent to transact business if it was sufficiently explained to him. But there is no evidence that the deed was read or explained to him; and, under the circumstances, I am forced to the conclusion that the burden of the proof is laid upon her to show that the deed, just as it was, was his free voluntary act; that he proposed then and there to give her his property absolutely, without consideration, as a gift."

From these facts the trial court concluded that the grantee in the deed had not removed the presumption of undue influence in obtaining the deed, which rested upon her, and hence that the deed was null and void, and rendered judgment accordingly, from which the defendants appeal.

For the appellants there was a brief by *Rogers & Mann*, attorneys, and *O. T. Williams*, of counsel, and oral argument by *Mr. Williams*.

For the respondents there was a brief by *Ryan & Merton*, and oral argument by *T. E. Ryan*.

WINSLOW, J. The salutary rule that, where a voluntary conveyance is made by an aged person of his entire property, without consideration, to one who stands in a position of trust and confidence to him, under circumstances of se-

crecy, the burden of proof is upon the grantee to show that the conveyance was untainted with undue influence or fraud, has been frequently laid down by this court. *Davis v. Dean*, 66 Wis. 100; *Cole v. Getzinger*, 96 Wis. 559. The county judge rightly concluded that this was such a case, and, being such a case, that the evidence was not sufficient to overcome the presumption of undue influence and fraud.

*By the Court.*— Judgment affirmed.