Will of Shanks: Syth, Executor, Appellant, vs. Shanks, Respondent.

*October 21—November 16, 1920.*

*Wills: Testamentary capacity: Insane delusion affecting disposition of property: Unnatural disposition: Costs: Unsuccessful attempt to probate: Costs in supreme court: Failure to follow rules.*

1. In a wife's contest of her husband's will on the ground that the husband, at the time of executing the will, was laboring under an insane delusion that the wife had been unfaithful, statements in the will that testator had wrongfully accused his wife of infidelity and that he regretted having made accusations are insufficient, under the evidence, to warrant the

court in setting aside a finding that the husband had been laboring under such delusion at the time of making the will.

2. Where the wife, prior to the husband's execution of the will, had for more than fifty years been a faithful wife and had helped him to accumulate his property, his will, executed under an insane delusion as to the wife's fidelity, which left her almost nothing for support in her old age, was properly refused probate, it being reasonably certain that but for such delusion she would have received a materially larger share of the estate.

3. The test as to the validity of a will executed by one laboring under an insane delusion is not whether testator had general testamentary capacity, but whether the insane delusion materially affected his will.

4. In a proceeding to probate a will by one named executor, wherein the executor merely sought to sustain the will by such competent testimony as was obtainable, it was improper for the county court, in disallowing probate of the will, to adjudge costs in the county court against the proponent, he having merely performed his duty.

5. Under Supreme Court Rule 44, an appellant who has printed his case by question and answer instead of in narrative form, and has printed much of the record not necessary to any question raised by the appeal, will not be allowed costs for the printed case.

APPEAL from a judgment of the county court of Clark county: H. A. ANDERSON, Judge. *Modified and affirmed.*

Proceedings to probate the purported will of John Shanks, deceased, proposed for probate by *John Syth,* the executor named therein. At the close of the evidence the court found as facts that said John Shanks for some time prior to the making of his will was suffering from insane delusions; that at the time he made his will he was mentally unsound and incapable by reason thereof to execute the will; and held that his will should be disallowed. From a judgment disallowing the will and requiring the proponent to pay costs the latter appealed.

*Emery W. Crosby* of Neillsville, for the appellant.

For the respondent there was a brief by *Rush & Devos* of Neillsville, and oral argument by *W. J. Rush.*

VINJE, J.   On the 17th day of February, 1919, the testator, John Shanks, executed his will devising to his wife the use for life of his homestead and household furniture, valued at about $4,000.   He also bequeathed her $3,000. The balance of his property, valued at $5,000, exclusive of the homestead, he left to his nephews and nieces.   On the 9th day of March, 1919, he committed suicide by hanging. He was then eighty-two years old and had lived amicably with his wife, aged seventy-two years, for over fifty years before his death, and the property he left had been accumulated by them during their married life.   It appears from the evidence, and there is basis therein for the finding of the trial court, that in the fall of 1918 the testator became the victim of the insane delusion that his wife was criminally intimate with a neighbor, a man of mature years having a wife and children and grandchildren, and, as the evidence shows, a man of unquestioned virtue and integrity.   The evidence further shows that there was no appearance or facts that could form any rational basis for the delusion. It was regarded as utterly unfounded by every one but the testator.   On the 10th day of December, 1918, he was adjudged insane and committed to the state insane asylum at Mendota, where he remained till February 10, 1919, when he had a rehearing and was adjudged sane by a jury and was released from further custody.   The proof shows, however, that he still harbored his insane delusion and did so on the morning of the day of his suicide.   Before 1918 he had always expressed his intention to leave all his property to his wife—they having no children or grandchildren living.

In his will occurs this statement:

"I have always been a man of violent temper and a jealous disposition.   That some time in the fall of 1918 I became very angry with my wife and in the heat of temper wrongfully accused her of infidelity.   I was sorry that I did this and immediately told her that I did not believe such

things, and I wish it to be understood in this my last will and testament that such statements were made while violently angry and jealous, and I am sorry that I made those statements. I wish to further state that I have no feeling of enmity or jealousy against my good wife, and that when my temper sufficiently cooled I knew I had wrongfully accused her, and wish to state that I believe her to be perfectly honorable and a good, virtuous wife, and that my feelings towards her are in no way bitter at this time, and I have tried by this will to properly take care of and leave enough to protect her as long as she shall live."

It is claimed that this negatives the fact that at the time of the execution of the will he was laboring under any insane delusion or was mentally incompetent to make a valid will. Were it not for the well known propensity of insane persons, or those suffering from insane delusions, to negative their true state of mind or to be unaware of it, more importance might be attached to the statement made in the will. Upon a consideration of all the evidence we deem that sufficient weight cannot be given it to set aside the findings of the trial court. The real facts are not much in dispute. The only material issue is whether the trial judge was warranted in finding from them that the insane delusion affected the testator in the making of his will to such an extent that but for the insane delusion his will would have been materially different. It seems to us that he was. *Barbo v. Rider,* 67 Wis. 598, 31 N. W. 155; *Bachmeyer v. Mutual R. F. L. Asso.* 87 Wis. 325, 58 N. W. 399. It is not a question whether testator had general testamentary capacity, for many persons laboring under insane delusions may be competent to make a will (*Will of Cole,* 49 Wis. 179, 5 N. W. 346), but whether the insane delusion under which the testator suffered materially affected the will he made. In other words, is it reasonably certain that but for the insane delusion his wife would have received a materially larger devise? If that is reasonably certain, then mental incapacity is sufficiently shown to invalidate the will made. Ann. Cas.

1916C, 4. There is no good reason shown why, under the circumstances of this case, the testator should not have left all his property to his wife, who for fifty years had helped earn it and whose needs required the income of all of it, if not the principal or a part thereof, for her support. By the will she was required to pay taxes and keep up the homestead. This, it is shown, would nearly exhaust the income of the $3,000 given her, leaving her almost nothing for support in her old age. A sane man would not do that to a wife who for over fifty years had faithfully performed all the duties of wifehood—especially so where, as here, his nephews and nieces had little claim upon his bounty.

*John Syth,* the appellant, was named executor in the will and propounded it for probate. Costs were adjudged against him in the county court. This we think should not have been done. It was his duty to propound the will for probate and let the court pass upon its validity. We see no reason why also it was not incumbent upon him to try to sustain the will by such competent evidence as was obtainable, and this is all he did. That the testator was correctly adjudged mentally incapable of making a valid will is no fault of the executor. The judgment will therefore be modified by granting costs to the appellant in the county court, to be paid out of the estate.

The appellant has printed the case by question and answer instead of in a narrative form and has printed much of the record not necessary to any questions raised by the appeal, contrary to the practice in this court. No costs will be allowed him in this court for the printed case. Supreme Court Rule 44.

*By the Court.*—Judgment modified as indicated in the opinion, and as so modified is affirmed, with costs in this court, except for printed case, to both parties to be paid out of the estate.