ESTATE OF MAHNKE: HAYES, Guardian *ad litem,* Appellant,
v. DE GROOT and others, Respondents.

*February 4—March 3, 1959.*

For the appellant there was a brief and oral argument by *John M. Hayes* of Sheboygan.

For the respondents there was a brief by *Gruhle & Fessler* of Sheboygan, and oral argument by *Jacob A. Fessler*.

DIETERICH, J.   The four daughters, only children of Otto E. Mahnke, have contested the validity of the will propounded.   The question arises as to whether certain obsessions on the part of the testator can be said to have constituted an insane delusion and so interfered with the operation of the testator's mind resulting in the exclusion of his four daughters from the will.

Testator was a large, robust, vehement individual of German extraction.   Formerly he was a furniture maker and for the past several years conducted from his home a feed and grain business.   His estate has a value of about $12,000 to $15,000.

After the death of Mrs. Mahnke in 1951, the testator employed Alma Wehmeyer as a housekeeper.   She served him until his death.

The testator was obsessed with the idea that the neglect of Dr. Nause in caring for his wife, caused her death.   He instituted a malpractice suit against Dr. Nause in 1953. The jury returned a negative verdict.   His daughters, Mrs. De Groot and Mrs. Palubicki, testified at the trial.   He demonstrated his ill will toward Mrs. Palubicki and Mrs. De Groot when he requested the district attorney to bring perjury charges against them because their testimony at

the Nause trial was not in accordance to his warped feelings. He constantly telephoned his daughters, sometimes several times a day. He also telephoned public officials. After the trial he wrote defamatory communications denouncing each and all who had anything to do with the Nause trial or its subject matter. He grossly misquoted and exaggerated and his accusations turned from mere neglect to murder; from an adverse verdict to a "whitewash;" from adverse testimony to perjury. He demanded to be publicly justified, and to bring those of contrary mind to justice was forcefully and relentlessly pressed upon public officials and the community from the time of the trial until his death. He was diabetic, and when his eyesight failed he then turned on Dr. Hanson, his present physician, with accusations of purposely blinding him and attempting to kill him to quiet him about the Nause case.

The testator consulted with the district attorney, David Weber, in 1955, in respect to drawing a will. The district attorney testified that he refused to draw the will because he felt that Otto E. Mahnke was too excited at the time about the Nause case and his two daughters who had testified at the Nause trial. He also testified that Otto E. Mahnke was suffering from a fixation with reference to the Nause case.

On February 23, 1957, Attorney Donald Koehn drafted Otto E. Mahnke's will, which testator executed as his last will and testament. Paragraph 4 of the will provides:

"I give, devise, and bequeath all of my estate real, personal or mixed, of whatever nature and kind, and wheresoever situate of which I shall die seized and possessed or to which I shall be entitled at the time of my death, to the Bank of Sheboygan, Sheboygan, Wisconsin, as trustee, in trust nevertheless, to have, hold, manage, and dispose of for the following uses and purposes:

"A. The sum of Thirty Dollars ($30) per month is to be paid to Alma F. Wehmeyer as hers absolutely for the remainder of her life. My said trustees may expend any part of the principal of my estate, if necessary, to fulfil the aforesaid obligation.

"B. My said trust estate shall be invested in good, sound, interest-bearing securities with due regard to the maintenance of the principal, believing that the security of the principal with a fair rate of interest is to be preferred, rather than a speculative investment in which the principal or profits are not assured.

"C. I hereby grant unto my said trustees or their successors, full power and authority to sell, resell, invest, and reinvest any portion of said trust estate on such terms, at such times and in such manner as they may deem best and proper, and to make and execute all deeds, conveyances, and papers necessary and convenient therefor, and to exercise all powers and perform all acts and do all things for all intents and purposes as I could do were I living.

"D. I hereby direct my said trustees to pay to Alma F. Wehmeyer the sum of Fifteen Dollars ($15) per year she to use said money to provide for the care of my grave and that of my wife, Wilhelmina Mahnke.

"E. This trust shall continue for and during the life of the said Alma F. Wehmeyer."

Paragraph 7 provides:

"Upon the termination of said trust, all the remainder of my estate I give, devise, and bequeath, as follows:

"A. To Cathleen Meyer, my granddaughter, the child of my daughter Mrs. Rhoda Morrow [Moreau], one fourth.

"B. To Katheran Meyer, my granddaughter, child of my daughter Mrs. Rhoda Morrow [Moreau], one fourth.

"C. To Michael Meyer, my grandson, child of my daughter Mrs. Rhoda Morrow [Moreau], one fourth.

"D. To Sherry Ann Palubicki, my granddaughter, child of my daughter Norma Palubicki, one fourth.

"E. Should any of the above-named persons namely Cathleen Meyer, Katheran Meyer, Michael Meyer, and

Sherry Ann Palubicki not survive me, the survivors of them are to share equally.

"F. I make no provision for my children Loretta De Groot, Arlisle Wirtz, Norma Palubicki, or Rhoda Morrow, *for reasons best known to myself.* I likewise make no provisions for my other grandchildren other than those named specifically herein *for reasons best known to myself.*" (Italics supplied.)

On October 21, 1957, the testator was ordered observed at a state mental hospital for a condition diagnosed as schizophrenic reaction, paranoid type, a chronic case. December 16, 1957, he was committed to the Sheboygan County Hospital and was released after fifteen days. Two weeks prior to his death he returned to the Sheboygan County Hospital. Walter Heinrich, attorney and trust officer of Sheboygan Citizens Bank, was appointed guardian of the person and estate of Otto E. Mahnke in January, 1958.

Mrs. De Groot, Mrs. Wirtz, and Mrs. Moreau, did not become estranged from the testator until after the mother's death, when he acquired these delusions about what caused her death. They did not visit him until a few weeks before his death. Mrs. Palubicki remained close to her father and continued to see him frequently until the very end.

An extensive hearing was conducted on the petition for probate. Defamatory communications typed by Rudy Felten and dictated by the testator were introduced. One of the letters written by Mahnke in 1956 to the adult De Groots stated that his lawyer advised him to institute perjury charges against them, and he referred to such endeavor on other occasions.

The trial court filed a memorandum opinion in which it was determined that the objectors had established by clear, convincing, and satisfactory evidence that Otto E. Mahnke at the time he executed the propounded instrument had been motivated by insane delusions toward his children.

In *Will of Shanks* (1920), 172 Wis. 621, 624, 179 N. W. 747, it was said:

"It is not a question whether testator had general testamentary capacity, for many persons laboring under insane delusions may be competent to make a will (*Will of Cole* [1880], 49 Wis. 179, 5 N. W. 346), but whether the insane delusion under which the testator suffered materially affected the will he made. In other words, is it reasonably certain that but for the insane delusion his wife would have received a materially larger devise? If that is reasonably certain, then mental incapacity is sufficiently shown to invalidate the will made. Ann. Cas. 1916 C, 4." See also *Estate of Joslin* (1958), 4 Wis. (2d) 29, 89 N. W. (2d) 822.

There is no evidence from which a sane mind could draw the conclusion of murder, malfeasance in office, perjury, attempted blinding and attempted murder, "whitewash," suppression of evidence, and the whole line of accusations made by him as the testimony and letters received in evidence discloses. There is no evidence from which a sane mind could draw the further conclusion that his daughters were ungrateful and disloyal because they failed to share his warped view and reasoning. There is no doubt that whatever estrangement that existed between the three daughters and the father is coincident with the formulation in his mind of the delusions he harbored. He could not understand and he could not reason that a sane mind could not accommodate the beliefs he held and the wild accusations he made.

Since the testator's children are proper objects of his bounty, the test raises the question, Is it reasonably certain that but for the insane delusion, his children would have received a substantial devise? If that is reasonably certain, then mental incapacity is sufficiently shown to invalidate the will made.

It is quite apparent from the testimony, and especially from the letters written to Mr. and Mrs. Anton De Groot

(daughter) in which he said: "You did this perjury on your own accord and you shall be dealt with accordingly." The secret of his unnatural feelings toward his daughters is that he really believed that they were trying to thwart his efforts to bring Dr. Nause to justice; that they were disloyal to their father because they did not see things and feel things in as strong and as exaggerated manner as he did. That their failure to see the guilt of Dr. Nause and all others connected with the case and to publicly say so amounted to a failure on their part to show him proper filial love and affection.

There is an abundance of evidence and proof of the constant endeavor of public officials and others to dissuade Otto E. Mahnke from his beliefs, both by evidence and argument, but he continued to persist in adhering to his beliefs and he carried them with him until he died.

The trial court's determination, that the insane delusion under which the testator suffered materially affected the will he made by excluding his children, is sustained, and in accordance therewith the judgment of the court denying and disallowing the probate of the instrument purported by said Otto E. Mahnke as and for his last will and testament is affirmed.

*By the Court.*—Judgment affirmed.

CURRIE, J., took no part.