ESTATE OF FILLAR: FILLAR, Appellant, v. ESTATE OF
FILLAR, Respondent.

*March 9—April 5, 1960.*

142

144

145

For the appellant there was a brief and oral argument by *John H. Ames* of Milwaukee.

For the respondent there was a brief and oral argument by *Ward Dunphy* of Milwaukee.

BROWN, J.  The present proceeding to discover assets of a deceased person and to procure from the county court an appropriate order when such a discovery is made is authorized by sec. 312.06, Stats.

By a finding of ultimate fact (finding 18) the county court determined:

"(18)  That George Fillar exercised undue influence upon his father, John Fillar, in securing the sum of $5,830.33 from said John Fillar and that said sum is an asset of the estate of John Fillar, deceased."

The judgment ordered George Fillar to make restitution of $5,830.33 to the estate of John Fillar.  George Fillar appeals, contending that the evidence does not sustain such

finding 18 nor sustain the detailed findings of fact of the elements necessary to a determination that undue influence has been practiced.

The usual situation presented in actions grounded on undue influence involves wills alleged to be so procured, and the principles to be applied in the determination of undue-influence cases are generally to be found in will controversies, but conveyances *inter vivos* are subject to the same legal principles as those stated in will cases. Thus conveyances *inter vivos* may be set aside when procured by undue influence as in *Davis v. Dean* (1886), 66 Wis. 100, 26 N. W. 737; *Cole v. Getzinger* (1897), 96 Wis. 559, 572, 71 N. W. 75; *Doyle v. Welch* (1898), 100 Wis. 24, 75 N. W. 400; *Estate of Larsen* (1959), 7 Wis. (2d) 263, 96 N. W. (2d) 489.

In *Reimer v. Reimer* (1959), 7 Wis. (2d) 146, 96 N. W. (2d) 375, we said, as we have often said before, findings of fact by a trial court are not to be set aside unless they are contrary to the great weight and clear preponderance of the evidence and where there is a dispute in the testimony the trier of the facts is the judge of the weight and credibility to be accorded to the testimony of the witnesses. In *Weber v. Kole* (1959), 7 Wis. (2d) 107, 95 N. W. (2d) 784, we expressed the same rule and added that it is not sufficient for reversal that a contrary finding might have been made with evidence in its support. Most recently in *Will of Freitag* (1960), 9 Wis. (2d) 315, 101 N. W. (2d) 108, an undue-influence case, this court held that a finding of fact by the trial court may not be disturbed on appeal unless contrary to the great weight and clear preponderance of the evidence and the elements of influence must be proved by clear, satisfactory, and convincing evidence. In such a case the findings of the trial court, its interpretation of the facts, and its determination of the credibility of the witnesses are

of great importance on appeal. Proof of undue influence or fraud is usually found as an inference from other facts, generally circumstantial, which may be sufficient to meet the required burden of proof. Id.

". . . it is the established rule in this state that in will cases fraud or undue influence must be established by clear, convincing, and satisfactory evidence which means something more than a mere preponderance of evidence. . . ." *Will of Faulks* (1945), 246 Wis. 319, 344, 17 N. W. (2d) 423, and we see no difference in the quantum or quality of proof to be required in order to establish undue influence in conveyances *inter vivos*. *Estate of Larsen, supra.*

In *Boardman v. Lorentzen* (1914), 155 Wis. 566, 145 N. W. 750, the late and learned Mr. Justice MARSHALL expressed the degree of proof to be required in such cases. Since that justice, himself, wrote the syllabus to the reported case it is especially authoritative and from it we quote:

"1. He who obtains property by will or otherwise through undue influence or consciously taking advantage of incompetency of the owner, commits a fraud of most-serious character.

"2. The common rule as to certainty of the existence of facts constituting fraud, applies, emphatically, in case of the wrong being that of obtaining property by undue influence or taking advantage of incompetency of the owner—such facts are required to be established by clear and satisfactory evidence.

"3. In a controversy as to whether property was obtained by undue influence, there is an evidentiary presumption in favor of the person charged, the same as in all cases sounding in fraud, that he did not perpetrate the wrong.

"4. The charge of obtaining property by undue influence may be circumstantially, *prima facie,* established; but that requires these essentials: Proof of a subject unquestionably susceptible to undue influence and clear and satisfactory evidence of opportunity to exercise such influence, a disposi-

tion to exercise such influence, and indication that it was in fact exercised.

"5. Upon a *prima facie* case of undue influence having been circumstantially or otherwise established, there is no shifting of the burden of proof upon the accused more than in any other case where plaintiff's evidence, unexplained or uncontradicted, would entitle him to judgment.

"6. In case of a charge of obtaining property by undue influence, *prima facie* or otherwise established, the defendant must meet such *prima facie* case to such extent, at least, that there is no longer clear and satisfactory proof of the facts constituting the charge of fraud."

Amplifying paragraph 6 of the syllabus, the body of the opinion, at pages 571 and 572, is as follows:

"It is unfortunate that trial courts now and then, cling, seemingly, to the idea of the shifting of the burden of proof in such cases, and in that way take a wrong view of the evidence. There is no more shifting of the burden of proof in this class of cases than in any ordinary case where the plaintiff by evidence in chief succeeds in making out a *prima facie* case. The burden of proof rests with him from the beginning to the end. The only distinguishing characteristic of the particular class is this: The court has held that some circumstances are sufficient to so lift the burden as to call for rebuttal. But all the defendant need then do is to produce sufficient evidence to so weaken plaintiff's case, that the circumstantial and other evidence in his behalf no longer establishes the fraud charged with the requisite clearness to warrant a decision in his favor. That is to say, a *prima facie* case, circumstantially made against the defendant, does not require him, in order to defeat it, to prove affirmatively that the act challenged was free from any fatal taint, as if he were the plaintiff holding the burden of proof and required to so establish facts. The charge against the defendant in such a case as this, in effect, accuses him of having perpetrated a fraud of a serious nature. There is a strong presumption in his favor against such wrongdoing, which persists to the end of the litigation unless overcome by circumstances incon-

sistent therewith, established by clear and satisfactory evidence. [Case cited.]"

In *Will of Stanley* (1937), 226 Wis. 354, 360, 276 N. W. 353, we specified again the four elements necessary to establish undue influence, and we added:

". . . where three of the elements are satisfactorily proven, very little evidence of the fourth is required."

These elements have been recognized as required in the late cases of *Will of Winnemann* (1956), 272 Wis. 643, 76 N. W. (2d) 616; *Will of Dobson* (1951), 258 Wis. 587, 46 N. W. (2d) 758; and *Estate of Fuller* (1957), 275 Wis. 1, 8, 81 N. W. (2d) 64.

A recent study of the subject was expressed in *Will of Freitag, supra,* to which we have already referred, and which we quote (pp. 317, 318):

"While these elements must be proved by clear, satisfactory, and convincing evidence, it was pointed out in *Estate of Larsen, supra,* that in most cases proof of undue influence may and usually does rest solely upon circumstantial evidence. The nature and purpose of undue influence is such that it is usually exercised under cover or in secret with little or no opportunity for the presence of disinterested parties. In *Will of Ehlke, supra,* we stated (p. 121): '. . . undue influence may rest and usually does rest wholly upon circumstantial evidence.' In *Will of Leisch, supra,* we stated (p. 648): 'The proof of undue influence generally rests in circumstantial evidence.' In recognition of the difficulty in proving undue influence an additional rule is applicable that when three of the four elements are established by the required proof, only slight evidence as to the fourth element is necessary to prove its existence. [Cases cited.]"

See also *Will of Quam,* ante, p. 21, 102 N. W. (2d) 217.

Three of the elements necessary to establish undue influence in the case at bar are so clear that no time need be

spent on reciting the clear, satisfactory, and convincing evidence in their support, other than to refer the reader to the statement of facts preceding the opinion. These elements, expressed in findings 16, 17, and 18, are that George had a disposition to exercise such influence, that he had the opportunity to exercise it, and the result is consistent with having exercised it.

The evidence upon which the court relied in determining the fourth element, that John Fillar was unquestionably susceptible to undue influence at the time he moved into George's home and thereafter, is set forth in the trial court's written decision. In May and June, 1957, John was a patient in Misericordia Hospital. On July 28, 1957, John Fillar left the home of his daughter, Michaeline, Mrs. Hoerig. He was then in a weak condition and required assistance to get from the house to George's automobile. Within two weeks after moving to George's home he decided to bequeath his entire property to George. Although his daughter Michaeline had cared for him for more than two years immediately past, and other members of the family had not neglected him, John had conceived the belief that all but George had deserted him. But after a few minutes of conference with the attorney, John abandoned his plan and gave preference to George over the other children only to the extent of $1,000. A few months more in George's home resulted in the changed plan to make a present conveyance of everything to George. Father Peksa testified that when this conveyance was under consideration, George being present, "his [John's] conversation was his worry about George being in debt, that the mortgage that he had on his home was certainly quite high, and yet he said he can't see why George should be paying so much interest when he himself has money he wants to give George. And, he seemed to have stressed it very clear, that he wanted to give—not

to loan or not to borrow or anything of that kind—but rather to give."

The mortgage was not due and was not in default. There is no evidence that George was worried about it. If John, a stranger to the mortgage, was susceptible to such a worry to the extent that he acted upon it, it is a reasonable inference to be drawn by the trial court that John was susceptible to influence, period!

In a trial to the court, the judge is the judge of the credibility of the witnesses and the weight to be given their evidence. There is no suspicion that Father Peksa or Mr. Young were not credible witnesses. Concerning the weight of their evidence, both these witnesses testified that they believed John Fillar to be competent to execute a will on August 8, 1957, and thought him to be a person not susceptible to undue influence. Mr. Young did not know John Fillar until he was called in to draft the will and Mr. Young could not understand the language in which John spoke. In the matter of drawing the contract of December 6th, Mr. Young did not see John at all but merely put into legal form the agreement which Father Peksa told him that John wanted. The weight of Mr. Young's opinion concerning John's resistance to influence must be considered slight. Father Peksa's conclusions are entitled to more weight and he said he did not think John was susceptible to influence. However, the trial court concluded that the facts required a contrary conclusion and the written decision filed by the learned county court shows that the court was well aware of the matters to be proved and the strength of the proof required before a finding of undue influence could be made.

In view of the fact that the three elements—disposition of George to exert undue influence, opportunity to do so, and a result consistent with so doing—all being so emphatically

established, practically without question, we consider that the proof of the fourth element, unquestioned susceptibility by John to undue influence by George, meets the lesser burden required of proof in such fourth respect.

*By the Court.*—Judgment affirmed.